# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ngozi Mbegbu, individually as the surviving spouse of decedent Balantine Mbegbu and on behalf of decedent's children, Ogechukwu Amarachukwu Gloria Mbegbu and C.C.E.M. (a minor), and as Personal Representative of the Estate of Balantine Mbegbu, <br><br> Plaintiffs, <br><br> v. <br><br> City of Phoenix, Matthew Johnson, Celina Gonzales, Joel Zemaitis, William Weber, and John and Jane Doe Spouses, <br><br> Defendants. | No. CV-16-00424-PHX-DGC <br><br> **ORDER** |

This case arises out of the death of Balentine Mbegbu. He died October 6, 2014 during an incident involving several Phoenix police officers. His surviving spouse, Ngozi Mbegbu, brought this action individually, on behalf of decedent's children, and as personal representative of his estate.

The complaint asserts a state law tort claim for wrongful death and § 1983 claims for excessive force and loss of familial association in violation of the Fourth and Fourteenth Amendments. The tort claim is brought against the City of Phoenix and Officers Matthew Johnson, Celina Gonzales, Joel Zemaitis, and William Weber, and the § 1983 claims are asserted against the individual officers only. Plaintiffs seek compensatory and punitive damages. Doc. 1-1 at 3-14.

Defendants have filed a motion for summary judgment. Doc. 47. The motion is fully briefed, and neither side requests oral argument. Docs. 52, 56. For reasons stated below, the Court will grant the motion in part and deny it in part.

## I.    Background.

Most of the facts are undisputed, but not all, and certainly not the inferences to be drawn from them. As explained below, the Court must consider the evidence in the light most favorable to Plaintiffs when ruling on Defendants' summary judgment motion. Viewing the evidence in this light, and for purposes of summary judgment, the facts are as follows.

On the night in question, Mbegbu was at home with his wife Ngozi and her sister. Shortly after 9:00 p.m., Officers Gonzales and Johnson responded to a 911 call from one of Mbegbu's friends who had concerns that he and Ngozi may have been fighting. The officers encountered Ngozi outside her home as she was leaving to pick up her son from basketball practice, and she assured the officers she was okay. She let the officers inside the home and began showing them pictures of her children.

Mbegbu was sitting on the couch eating some food. He was surprised to see the officers and asked why they were there and if they were going to kill him. He also asked the officers and Ngozi if she had called the police, and they said no. He stood up briefly, but sat back down when the officers told him to, and again asked why they were there. The officers said someone had called about a domestic dispute, but Mbegbu explained nothing had happened and asked the officers to leave.

Officer Johnson told Mbegbu, who was stammering and speaking loudly, to stop talking and warned him that he should not yell at police officers. Officer Gonzales radioed for back up and Officers Zemaitis and Weber arrived at the scene. Johnson then discussed the situation with the other officers and informed Mbegbu he was under arrest. Mbegbu pulled his arm away when Johnson attempted to handcuff him, and was struck in the face by Johnson during the ensuing arrest.

Officer Zemaitis tased Mbegbu in the face and chest without warning. After the first tasing, which lasted eleven seconds, Mbegbu exclaimed: "My eye, my eye" and "I can't breathe, I'm dying." Zemaitis tased Mbegbu a second time for six seconds.

Officer Weber then threw Mbegbu to the ground with the help of Johnson and Zemaitis. Seeing Mbegbu laying on the floor bleeding, Ngozi shouted: "You guys are killing my husband." Johnson put his knee on the back of Mbegbu's neck and pressed his thumb behind Mbegbu's ear. Weber knelt on Mbegbu's back and he and Johnson pulled Mbegbu's arms back and handcuffed him.

Mbegbu slumped over when the officers sat him up. He was foaming at the mouth and did not appear to be breathing. The officers removed the handcuffs and began CPR. Paramedics arrived and took Mbegbu to the hospital, where he later was pronounced dead. Plaintiffs brought this wrongful death and civil rights action one year later.

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence of the nonmoving party, however, is to be believed, and all justifiable inferences drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge[.]" *Id.* at 255.

/ / /

/ / /

**III.    § 1983 Excessive Force Claim.**

Plaintiffs allege in count two that the officers used excessive force in arresting Mbegbu in violation of his Fourth Amendment right to be free from unreasonable seizures, and that this use of force caused his death.  Doc. 1-1 at 8-10.  Defendants contend that the use of force was objectively reasonable, that the officers are entitled to qualified immunity, and that Plaintiffs cannot establish medical causation.  Doc. 47 at 9-22.  As explained more fully below, the Court will grant summary judgment on the excessive force claim only in favor of Officer Gonzales.

**A.    Reasonableness of the Force.**

The Supreme Court provided guidance on the use of force nearly 30 years ago in *Graham v. Connor*, 490 U.S. 386 (1989).  The Court instructed that "[d]etermining whether the force used to effect an arrest is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.  The importance of those governmental interests is determined by "looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

More recently, the Supreme Court emphasized that while the *Graham* factors are important, "there are no per se rules in the Fourth Amendment excessive force context; rather, courts 'must still slosh their way through the factbound morass of 'reasonableness.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)).  Stated differently, courts should "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Id.* (quoting *Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir. 2010)). The Court therefore will begin its analysis by turning first to the *Graham* factors while

keeping in mind that the ultimate determination of reasonableness is a fact-intensive inquiry that must be made by considering the totality of the circumstances.

### 1.    Quantum of Force.

Consistent with *Graham*, the Court will begin by considering the type and amount of force used against Mbegbu by each Defendant.  *See Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001).

#### a.    Officer Gonzales.

The Court agrees with Defendants that no unreasonable force is attributed to Officer Gonzales.  Doc. 47 at 9.  It is undisputed that Gonzales only helped Johnson handcuff Mbegbu and then briefly touched his hand to help him up from the ground.  Doc. 48 ¶¶ 60, 117; Doc. 53 ¶¶ 28, 39.  Plaintiffs do not argue, and no jury reasonably could find, that this conduct was excessive or otherwise in violation of the Fourth Amendment.

Plaintiffs cite *Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000), for the proposition that police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect.  Doc. 52 at 14.  "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede."  *Cunningham*, 229 F.3d at 1290.  Plaintiffs assert that this is a factual inquiry, but point to no facts or evidence showing that Officer Gonzales had a "realistic opportunity" to intercede and stop the arrest but deliberately refused to do so.  *Id.*  Moreover, it is undisputed that Officer Gonzales tried to help Mbegbu up from the ground when she had the chance, and then called paramedics and performed CPR in an effort to save Mbegbu's life.  Doc. 48 ¶¶ 117-18; Doc. 53 ¶ 39.  The Court will grant summary judgment in favor of Gonzales on the excessive force claim.

#### b.    Officer Johnson.

Defendants assert that Officer Johnson's "closed-fist strike" to Mbegbu's head and the pressure point to his ear were used to stop him from kicking the officers and constituted intermediate level force.  Doc. 47 at 13-14.  But the parties genuinely dispute

- 5 -

whether Mbegbu kicked the officers and whether any such movement was intentional or simply a natural reaction to being tased. Doc. 53 ¶ 27; *see* Doc. 52-2 at 16, 24, 28. Defendants further assert that Johnson put his knee on Mbegbu's neck to keep him from getting up. Doc. 47 at 15. Again, however, the parties dispute whether Mbegbu continued to struggle after he was tased and taken to the ground. Doc. 53 ¶ 27.

"Closed fist punches, while generally less dangerous than baton strikes, are still capable of inflicting serious bodily injury." *Myles v. Cty. of San Diego*, No. 15-cv-1985-BEN, 2017 WL 4169722, at *8 (S.D. Cal. Sept. 20, 2017) (citations omitted). Indeed, Defendants admit that the bleeding and swelling on the left side of Mbegbu's head is consistent with Johnson's punch. Doc. 47 at 15. Construing the evidence in Plaintiffs' favor – as required at the summary judgment stage – the Court finds that the amount of force used by Officer Johnson was significant. *See Russell v. City & Cty. of S.F.*, No. C-12-00929-JCS, 2013 WL 2447865, at *10 (N.D. Cal. June 5, 2013) (finding an officer's punch to be significant, intermediate level force where the plaintiff may have suffered a laceration).

### c. Officer Zemaitis.

Officer Zemaitis's use of a taser also constituted significant force. In *Bryan*, this Circuit described the deployment of a taser in dart-mode, as occurred in this case, as follows:

> [T]he taser uses compressed nitrogen to propel a pair of "probes" – aluminum darts tipped with stainless steel barbs connected to the [taser] by insulated wires – toward the target at a rate of over 160 feet per second. Upon striking a person, the [taser] delivers a 1200 volt, low ampere electrical charge. The impact is as powerful as it is swift. The electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless.

630 F.3d at 824. *Bryan* rejected the notion that a taser shot is a nonintrusive level of force because it "results only in the 'temporary' infliction of pain[.]" *Id.* at 825. The pain suffered from a taser "is intense, is felt throughout the body, and is administered by effectively commandeering the victim's muscles and nerves." *Id.* Beyond the pain,

"tasers result in 'immobilization, disorientation, loss of balance, and weakness,' even after the electrical current has ended." *Id.* (citation omitted). In short, "a taser shot [is] a 'painful and frightening blow.'" *Id.* at 826 (citations omitted).

Given the severe "physiological effects, the high levels of pain, and foreseeable risk of physical injury" resulting from taser shots, the Court has little trouble finding that Zemaitis's use of a taser in this case "constitutes an intermediate, significant level of force." *Mattos*, 661 F.3d at 443; *see Klamut v. Cal. Hwy. Patrol*, No. 15-cv-02132, 2017 WL 492824, at *10 & n.8 (N.D. Cal. Feb. 7, 2017) (use of a Taser X2 constituted an intermediate level of force under *Bryan*). Indeed, the fact that Officer Zemaitis "gave no warning to [Mbegbu] before tasing [him] pushes this use of force far beyond the pale." *Mattos*, 661 F.3d at 451.

### d.    Officer Weber.

Ngozi testified that after the tasing, Officer Weber threw Mbegbu hard to the ground and he hit his head and bled all over the floor. Doc. 52-2 at 9-10, 13-15. Defendants contend that this testimony is consistent with Weber's account that he "grabbed Mbegbu to prevent him from getting up, turned and took him to the ground on his stomach." Doc. 47 at 15. Whether these accounts are consistent is for the trier of fact to decide. For purposes of summary judgment, the Court accepts Ngozi's testimony as true and finds that the force Weber used – throwing Mbegbu hard to the ground and putting his knee in Mbegbu's back – was a significant amount of force given that Weber was aware Mbegbu already had been tased by Officer Zemaitis. *See Young v. Cty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) (describing "intermediate force" as the type "that, while less severe than deadly force, nonetheless present[s] a significant intrusion upon an individual's liberty interest").

In summary, the Court finds that Officer Gonzales's use of force was not excessive as a matter of law and, for purposes of summary judgment, that the other officers used significant, intermediate level force against Mbegbu.

/ / /

## 2. Severity of the Crime.

Considering the first governmental interest factor, the severity of the crime, the Court is mindful that it must construe the facts in the light most favorable to Plaintiffs at this stage. *See Mattos*, 661 F.3d at 449. The Court notes this requirement because in seeking summary judgment, Defendants impermissibly construe the disputed facts in their favor. Defendants assert that when they entered the house, Mbegbu "exploded in anger" and "acted aggressively" by "demanding to know if Ngozi called the police and then accusing the officers of coming to kill him." Doc. 47 at 11. But Plaintiffs dispute this characterization, noting that although Mbegbu naturally stammered when he spoke, he did not jump off the couch in furious anger or otherwise act aggressively toward the officers. Doc. 53 ¶ 4; Doc. 52-2 at 6-7, 22-23.

Defendants further assert that Mbegbu committed aggravated assault by "aggressively swatting Officer Johnson's hand, kicking Officer Gonzales' shins three times, and kicking Officer Zemaitis in the groin[.]" Doc. 47 at 12. Again, however, Plaintiffs dispute that Mbegbu assaulted the officers. Ngozi's sister, Sabina Odom, testified that Mbegbu did not struggle with the officers or otherwise resist arrest, and that his kicking motion was unintentional and resulted from being tased. Doc. 52-2 at 24, 26-28. Ngozi testified that the officers arrested Mbegbu merely because he was yelling at them. *Id.* at 4, 6-7, 10.

Viewing the evidence in the light most favorable to Plaintiffs, and resolving all conflicts in their favor, *see Mattos*, 661 F.3d at 449, Mbegbu at most yelled at the officers and pulled his arm away when they tried to arrest him. Doc. 52-2 at 11-12. While this may have momentarily delayed his arrest, it did not rise to the level of aggravated assault as Defendants claim. "Thus, under *Graham*, the severity of the crime, if any, was minimal." *Mattos*, 661 F.3d at 449 (finding that the plaintiff's conduct did not constitute the crime of obstructing arrest where she stood between the officer and her husband and used her arm to prevent the officer from pressing against her).

///

### 3. Safety Threat.

"The 'most important' factor under *Graham* is whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Bryan*, 630 F.3d at 826 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)). The officers in this case were responding to a 911 domestic dispute call. Courts, including this one, "take very seriously the danger that domestic disputes pose to law enforcement officers[.]" *Mattos*, 661 F.3d at 450. There is little doubt that an officer arriving at the scene reasonably could have been concerned about his or her safety and that of others, including the potential victim. *Id.*

But when the officers first arrived at Mbegbu's house, Ngozi met them outside and assured them she was okay. Docs. 48 ¶ 9, 53 ¶ 1. When the officers entered the house, Mbegbu was sitting on the couch and clearly was surprised to see the officers. Mbegbu himself explained that nothing had happened and asked the officers to "please go." Doc. 52-6 at 6. Mbegbu was not armed, and after the initial encounter there was no objective reason to believe he had engaged in domestic violence or committed any other crime. Although he stammered and raised his voice, he did not verbally threaten the officers. To the contrary, he repeatedly asked the officers why they were there and if they were going to kill him. *Id.* at 4, 6-7, 10, 15, 22.

"For a court to find justification for the use of significant force, 'the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public.'" *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *14 (D. Ariz. Nov. 3, 2016) (quoting *Bryan*, 630 F.3d at 826). "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281. Construing the evidence in Plaintiffs' favor, the Court finds that Mbegbu posed no serious threat to the officers or others at the time of arrest. *See Mattos*, 661 F.3d at 449 (finding no threat to officer safety where the suspect made no verbal threat and only used her hands to prevent the officer from touching her); *Bryan*, 630 F.3d at 826-27 (finding no safety threat even

though the plaintiff got out of his car and took a step toward the officer while shouting expletives because "at no point did he level a physical or verbal threat"); *Smith*, 394 F.3d at 702 (finding no safety threat even though the suspect shouted expletives and shielded one hand from the officers as they handcuffed him).

### 4.    Flight or Resistance.

The third governmental interest factor is whether the suspect attempted to flee or actively resisted arrest. *Deorle*, 272 F.3d at 1280. The crux of this *Graham* factor is "compliance with the officers' requests, or refusal to comply." *Mattos*, 661 F.3d at 450.

In this case, there is no suggestion that Mbegbu attempted to flee. Rather, he was sitting on the couch when the officers arrived and complied with their commands to sit back down after briefly standing up. Doc. 52-2 at 4-6. Contrary to Defendants' assertion, there is no undisputed evidence showing that Mbegbu was "actively and aggressively resisting arrest throughout the encounter." Doc. 47 at 12. As explained above, there is a triable issue as to whether Mbegbu actively struggled or assaulted the officers during the arrest. According to Plaintiffs' rendition of the facts, the most that can be said is that Mbegbu minimally resisted arrest by refusing to be quiet and pulling his arm away. Doc. 52-2 at 11-12.

### 5.    Weighing the Individual Liberty and Governmental Interests.

Whether the manner of Mbegbu's arrest was objectively reasonable or in violation of the Fourth Amendment requires the Court "to consider whether the degree of force used was warranted by the governmental interests at stake." *Deorle*, 272 F.3d at 1282 (citing *Graham,* 490 U.S. at 396). Stated differently, the "degree of force used by [the officers] is permissible only when a strong governmental interest compels the employment of such force." *Id.* at 1279. For purposes of summary judgment, the Court concludes that no strong governmental interest warranted the quantum of force used against Mbegbu by Officers Johnson, Zemaitis, and Weber.

The officers used significant, intermediate level force. Mbegbu's offense was minimal. Although the officers upon first arriving were faced with a *potentially*

dangerous domestic dispute situation, Ngozi explained that there had been no domestic dispute and Mbegbu posed no threat to the officers or others at the time of arrest. He did not attempt to flee and only minimally resisted arrest by pulling his arm away.

Considering the *Graham* factors and the totality of the circumstances, and viewing the evidence in the light most favorable to Plaintiffs, the Court cannot determine as a matter of law that the significant use of force against Mbegbu was reasonable. The Court will deny summary judgment with respect to Officers Johnson, Zemaitis, and Weber because a jury reasonably could conclude that their use of force was constitutionally excessive in violation of the Fourth Amendment.

### B. Qualified Immunity.

A defendant in a § 1983 action is entitled to qualified immunity from civil liability if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In a suit against a police officer under § 1983, the court's initial inquiry is whether, 'taken in the light most favorable to the party asserting the injury,' the facts alleged show that the officer's conduct violated a constitutional right." *Ericson*, 2016 WL 6522805, at *16 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If such a violation is shown, "the court must then determine whether the right violated was so clearly established that the officials are not entitled to qualified immunity." *Id.*

For reasons stated above, Plaintiffs' version of events shows that the force used to arrest Mbegbu violated his Fourth Amendment right to be free from unreasonable seizures. Defendants contend that this right was not clearly established in a situation where the suspect was "combative and actively resisting." Doc. 47 at 19. Defendants assert that the force was used to stop Mbegbu from kicking the officers and getting up off the ground. *Id.* But these assertions are genuinely disputed and do not square with the testimony of Ngozi and her sister.

With respect to qualified immunity, Defendants assert that existing precedent must have placed the constitutional question beyond debate. *Id.* at 18. But determining that

the law was clearly established at the time of the incident "do[es] not 'require a case directly on point[.]'" *Longoria v. Pinal Cty.*, --- F.3d ----, 2017 WL 4509042, at *7 (9th Cir. Oct. 10, 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This Circuit has "acknowledged that qualified immunity may be denied in novel circumstances." *Id.* (citing *Mattos*, 661 F.3d at 442); *see Hope v. Pelzer*, 536 U.S. 730, 738 (2002). "'Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.'" *Longoria*, 2017 WL 4509042, at *7 (quoting *Deorle*, 272 F.3d at 1286).

The use of force in this case occurred in October 2014. With respect to the tasing by Officer Zemaitis, "[o]ne could argue that the use of painful, permanently scarring weaponry on non-threatening individuals, who were not trying to escape, should have been known to be excessive by any informed police officer under the long established standards of *Graham*." *Mattos*, 661 F.3d at 453 (Schroeder, J., concurring). But no such argument need be made in this case. Prior to Mbegbu's tasing, this Circuit had clearly established in *Mattos* that the tasing of an unarmed individual, in his own home, where the person was not attempting to flee or resisting arrest and posed no serious threat to officer safety, constitutes an excessive amount of force in violation of the Fourth Amendment. 661 F.3d at 448-52; *see also Bryan*, 630 F.3d at 832 (holding that the plaintiff alleged a constitutional violation where he was tased in dart mode even though he "was neither a flight risk, a dangerous felon, nor an immediate threat"). Officer Zemaitis has not, at the summary judgment stage, shown that he is entitled to qualified immunity on the excessive force claim.

Plaintiffs argue, correctly, that the law was clearly established at the time of Mbegbu's arrest that the "use of non-trivial force of any kind" is unreasonable when used against a person who has engaged in only passive resistance. *Gravelet-Blondin v. Shelton*, 728 F.3d. 1086, 1094 (9th Cir. 2013); *see Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (citing cases dating back to 2002 recognizing that "a failure to fully

or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"); *see also Bryan*, 630 F.3d at 829-30 (arrestee's cursing and exiting his vehicle despite being told to stay in car was not active resistance); *Smith*, 394 F.3d at 703 (arrestee's refusal to remove hands from pockets and place them on his head was not active resistance); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055-56 (9th Cir. 2007) (arrestee's actions in physically impeding the officer's search of his pockets was not active resistance). In this case, the quantum of force used by Officers Johnson and Weber was more than trivial – it constituted significant, intermediate level force. Crediting Plaintiffs' version of events as true, as required at the summary judgment stage, the Court finds that the officers are not entitled to qualified immunity. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 480-81 (9th Cir. 2007) (officers used excessive force by punching the arrestee and kneeling on him even though he refused to kneel, clenched his fists in a combative stance, and pulled his arm away during the arrest).

### C. Reasonableness of Force Summary.

This Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). Indeed, "because the question of excessive force nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [this Circuit has] held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly." *Hughes v. Kisela*, 862 F.3d 775, 782 (9th Cir. 2016) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). This is such a case. Material questions of fact – such as the quantum of force used, the amount of resistance, and the severity of the alleged crime and threat level – plainly are in dispute.

Moreover, the Court is mindful that Mbegbu died during the incident. "Cases in which the victim of alleged excessive force has died pose a particularly difficult problem in assessing whether the police acted reasonably, because the witness most likely to contradict the officers' story is unable to testify." *Ericson*, 2016 WL 6522805, at *15

(citing *Gregory v. Cty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008)).  The Court simply cannot, as a matter of law and undisputed fact, conclude that Officers Johnson, Zemaitis, and Weber used reasonable force in arresting Mbegbu.  *See Rosales v. Cty of L.A.*, 650 F. App'x 546, 548 (9th Cir. 2016) (noting that summary judgment in excessive force cases should be granted "sparingly," especially where the witness who could best contradict the officers is now dead).

### D. Causation.

To prove their § 1983 claims, Plaintiffs must show that the officers' use of force caused Mbegbu's death.  *See Wilson v. Maricopa Cty.*, 463 F. Supp. 2d 987, 994 (D. Ariz. 2006).  Causation requires a showing that the officers' conduct was a "moving force" behind the constitutional violation.  *Id.*  In order to be a moving force, Plaintiffs must show that the unconstitutional actions were "closely related to the ultimate injury."  *City of Canton v. Harris*, 489 U.S. 378, 379 (1989); *see Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992) (same).

Defendants contend that the excessive force claim fails as a matter of law because Plaintiffs cannot establish medical causation.  Doc. 47 at 9-10.  Defendants assert that there is no evidence directly connecting the force used to Mbegbu's death.  *Id.*  Defendants note that the medical examiner concluded that the cause of death was cardiac arrest and the manner of death was undetermined.  *Id.* at 6.

Although the specific manner of Mbegbu's death was undetermined given the potential for both natural and non-natural causes, the medical examiner made clear that the death occurred in a setting that involved "law enforcement subdual."  Doc. 48-5 at 32-34.  This subdual included "closed fist strike to the face, use of conducted electrical device, prone restraint, and handcuff placement."  *Id.* at 33.  The medical examiner noted that Mbegbu had a "laceration with bruising and swelling on his left cheek" and "[s]kin lesions on [his] chest" consistent with taser probes.  *Id.*  This evidence is consistent with Plaintiffs' claim that the officers' excessive force was a proximate cause of Mbegbu's death.  *See Mattos*, 661 F.3d at 443 (describing the severe effects of a taser shot and the

"foreseeable risk of physical injury"); *Myles*, 2017 WL 4169722, at *8 (explaining that closed-fist strikes are "capable of inflicting serious bodily injury").

Moreover, Mbegbu himself exclaimed that he was dying after being punched in the face and tased. Doc. 52-2 at 9-10, 13-15, 23-24. Similarly, Ngozi was shouting during the incident that the officers were "killing my husband." *Id.* at 6-9. For purposes of summary judgment, the force used to arrest Mbegbu was significant, particularly the tasings. *See Bryan*, 630 F.3d at 824. Given this circumstantial evidence, a jury reasonably could infer that the officers' conduct was closely related to Mbegbu's death.

Defendants note that Plaintiffs have disclosed no medical expert to opine about the cause of death. Doc. 47 at 9. But Defendants cite, and the Court has found, no legal authority requiring expert testimony on causation in a § 1983 action. To the contrary, "[c]ircumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact[.]" *United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977); *see Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (same).[1] Moreover, with respect to Defendants' proffered expert opinions that Mbegbu's death was not caused by the officers' conduct (Doc. 47 at 7-8), the jury is free to reject this evidence or otherwise give it the weight it deserves in light of all the other evidence.[2]

Defendants essentially would have the Court find, as a matter of undisputed fact, that Mbegbu would have suffered a heart attack and died on the night in question had the officers never come to his home and arrested him. But "'[c]ausation is generally a question of fact for the jury[.]'" *Wilson*, 463 F. Supp. 2d at 994 (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)). The facts of this case, when construed in Plaintiffs' favor, would "support a jury finding that the 'constitutional tort' committed

---

[1] *See also* 9th Cir. Civ. Jury Instr. 1.12 (2017) ("The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.").

[2] *See* 9th Cir. Civ. Jury Instr. 2.13 (2017) (noting that expert opinions "should be judged like any other testimony").

against [Mbegbu] was closely related to" his death. *Oviatt*, 954 F.2d at 1478; *see Rosales*, 650 F. App'x at 548 (reversing summary judgment where the jury reasonably could infer from circumstantial evidence "that, 24 to 72 hours before dying, Rosales suffered blunt force trauma to his abdominal area that caused his acute pancreatitis").[3]

### E. Excessive Force Summary.

The Court will grant summary judgment on the § 1983 excessive force claim in favor of Officer Gonzales and deny summary judgment with respect to Officers Johnson, Zemaitis, and Weber.[4]

## IV. Section 1983 Loss of Familial Association Claim.

Plaintiffs allege in count three that by using excessive force and thereby killing Mbegbu, the individual officers violated Plaintiffs' Fourteenth Amendment rights to the society and companionship of their late husband and father. Doc. 1-1 at 10-11. Stated differently, the same allegation of excessive force giving rise to the Fourth Amendment claim for Mbegbu's loss of life also gives his wife and children "a substantive due process claim based on their loss of his companionship." *Smith v. City of Fontana*, 818 F.2d 1411, 1420-21 (9th Cir. 1987).

Absent an underlying constitutional violation, however, a derivative familial association claim cannot survive. *See Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1197, 1212-13 (D. Ariz. 2008). Because Officer Gonzales did not violate Mbegbu's Fourth Amendment rights for reasons stated above, the Court will grant summary judgment in her favor on the derivative Fourteenth Amendment claim. The Court, however, will deny summary judgment on this claim with respect to the other three officers.

---

[3] Given this conclusion, the Court rejects Defendants' argument that recovery for pre-death pain and suffering is precluded as a matter of law under Arizona's survival statute, A.R.S. § 14-3110. Doc. 47 at 9-10; *see Erickson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2017 WL 2335659, at *8 (D. Ariz. May 30, 2017) (finding Arizona's survival statute inconsistent with § 1983's policy of deterrence "because the abatement of pre-death pain and suffering damages is often 'tantamount to a prohibition' of a survival claim") (quoting *Chaudry v. City of L.A.*, 751 F.3d 1096, 1104 (9th Cir. 2017)).

[4] Plaintiffs do not assert a § 1983 claim against the City of Phoenix under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The Supreme Court has made clear that only conduct that "shocks the conscience" is cognizable as a substantive due process violation under the Fourteenth Amendment. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Rochin v. California*, 342 U.S. 165, 172-73 (1952)). Generally, a showing of deliberate indifference to the violation of constitutional rights is sufficient to meet the "shocks the conscience" standard. Where, however, deliberation was not possible and the officers "faced an evolving set of circumstances that took place over a short period of time necessitating 'fast action,'" the plaintiffs must make a higher showing that the officers acted with the "purpose to harm." *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 853).

Defendants contend that the purpose-to-harm standard applies and Plaintiffs have failed to meet it. Doc. 47 at 17. Construing the evidence in Plaintiffs' favor, however, there is a genuine dispute as to whether the deliberate indifference or purpose-to-harm standard applies to the officers' conduct.

Officer Johnson arrived at the scene at approximately 9:11 p.m. Doc. 48 ¶ 8. Defendants concede that Mbegbu's arrest did not occur until at least ten minutes later, and that during this time Officer Johnson waited for backup and then had discussions with the other officers regarding the decision to arrest Mbegbu. *Id.* ¶¶ 29-35. A triable issue exists as to whether the officers had the opportunity for actual deliberation before arresting Mbegbu. The Court therefore cannot conclude on summary judgment that the more demanding purpose-to-harm standard applies.

In other words, this is not a case where "the undisputed facts point to one standard or the other." *Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1165 (E.D. Cal. 2016) (citation and quotation marks omitted). By its nature, "the determination of which situation [the officer] actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards." *Id.* Because such evidence exists in this case, there is a triable issue as to whether the officers were "dealing with an escalating situation that required immediate action, which would require application of

the 'purpose to harm' standard, or whether the circumstances were such that deliberation was practical because there was no need for immediate action." *Adam v. Cty. of L.A.*, No. CV-13-1156-GW(JCGx), 2014 WL 12634521, at *4 (C.D. Cal. Aug. 28, 2014). In short, the Court cannot "determine at summary judgment whether the officer[s] had time to deliberate . . . or instead had to make a snap judgment[.]" *Garlick*, 167 F. Supp. 3d at 1165; *see Adam*, 2014 WL 12634521, at *4 (denying summary judgment where evidence showed that the decedent was unarmed and seated in the street until the officers attempted to arrest him); *Rose v. Cty. of Sacramento*, 163 F. Supp. 3d 787, 792 (E.D. Cal. 2016) (finding a triable issue as to the applicable standard where the parties disputed whether the decedent aggressively attacked the officer or merely refused to lie on the ground). Moreover, because the parties differ so vastly in their recounting of the facts, the Court finds that there is a genuine dispute as to whether the officers acted with either deliberate indifference or a purpose to harm. *See Rose*, 163 F. Supp. 3d at 792.

The Court will grant summary judgment on the § 1983 loss of familial association claim in favor of Officer Gonzales, and deny summary judgment with respect to Officers Johnson, Zemaitis, and Weber.

## V. Wrongful Death Claim.

Plaintiffs assert a wrongful death claim in count one of the complaint. Doc. 1 ¶¶ 34-35. Under Arizona law, an action for wrongful death is a statutory negligence action requiring a showing that the alleged tortfeasor breached a reasonable standard of care. *See* A.R.S. § 12-612. "Ordinarily, the standard of care to be applied in a negligence action focuses on the conduct of a reasonably prudent person under the circumstances, . . . [and] the jury may rely on its own experience in determining whether the defendant acted with reasonable care." *Porter v. Ariz. Dep't of Corr.*, No. 2:09–CV–2479–HRH, 2012 WL 7180482, at *3 (D. Ariz. Sept. 17, 2012) (citations and quotation marks omitted). In cases where a person is alleged to have negligently rendered services in a trade or profession, however, expert testimony is required to educate the jury

regarding the standard of care to be exercised in the respective trade or profession. *St. Joseph's Hosp. v. Reserve Life Ins. Co.*, 742 P.2d 808, 816 (1987).

Expert testimony is required in this case, Defendants contend, because police tactics for restraining a suspect are beyond the common knowledge of a lay person. Doc. 47 at 20. In support of this contention, Defendants cite *Naki v. Hawaii*, No. CV-13-02189-PHX-JAT, 2015 WL 4647915 (D. Ariz. Aug. 5, 2015). *Naki*, however, involved the standard of care for a correctional facility and the need for top-bunk safety measures. *See id.* at *2 (noting that other courts have applied the expert testimony requirement to "prison operations"). Defendants cite no Arizona case law holding that expert testimony is necessary to establish a standard of care for the use of force by police officers. Moreover, expert testimony "is not required in cases where 'the negligence is so grossly apparent that a layman would have no difficulty in recognizing it.'" *Bell v. Maricopa Med. Ctr.*, 755 P.2d 1180, 1183 n.1 (Ariz. Ct. App. 1988) (citation omitted). The Court, on the present record, cannot conclude that Plaintiffs' wrongful death claim fails as a matter of law for lack of expert testimony regarding the standard of care.[5]

Defendants further contend that the wrongful death claim fails for the same reasons that the officers' use of force was objectively reasonable under federal law, and that Plaintiffs cannot establish causation. Doc. 47 at 20. As with the excessive force claim, however, the Court finds that there are triable issues as to whether Officers Johnson, Zemaitis, and Weber acted negligently and caused Mbegbu's death. *See Sketo v. Olympic Ferries, Inc.*, 436 F.2d 1107 (9th Cir. 1970) (causation in a wrongful death case can be based on a "permissible inference from the circumstantial evidence surrounding the death"); *Heck v. City of Lake Havasu*, No. CV-04-1810-PCT-NVW, 2006 WL 2460917, at *11-12 (D. Ariz. Aug. 24, 2006) (denying summary judgment where the jury reasonably could infer from circumstantial evidence that carbon monoxide

---

[5] Defendants' reliance on *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31 (D.D.C. 2007), is misplaced. That case involved the application of District of Columbia law and the standard of care for security at a night club which was "a large and complicated operation" that may "host 3,000 to 5,000 guests throughout a single night." *Id.* at 46.

1  contributed to a drowning death). The Court will deny summary judgment in this regard
2  but grant it on the wrongful death claim with respect to Officer Gonzales for reasons
3  stated above.

4  **VI.    Punitive Damages.**

5      Defendants seek summary judgment on Plaintiffs' request for punitive damages
6  against the individual officers. Doc. 47 at 21. Plaintiffs do not dispute that an award of
7  punitive damages on the state law tort claim is barred pursuant to A.R.S. § 12-820.04
8  because the officers were acting within the scope of their employment. *See* Doc. 1-1 at
9  3-4. The Court will grant summary judgment in this regard.

10      With respect to the § 1983 claims, however, "[i]t is well-established that a 'jury
11  may award punitive damages under § 1983 either when a defendant's conduct was driven
12  by evil motive or intent, or when it involved a reckless or callous indifference to the
13  constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir.
14  993) (quoting *Davis v. Mason Cty.*, 927 F.2d 1473, 1485 (9th Cir. 1991)); *see Smith v.
15  Wade*, 461 U.S. 30, 56 (1983). As explained above, there are triable issues as to whether
16  the officers acted with deliberate indifference to Mbegbu's Fourth Amendment rights.
17  If a jury were to so find, it also could conclude that the officers' conduct involved a
18  "reckless or callous indifference" to Mbegbu's constitutional rights. *See Palmer v.
19  Arizona*, No. 2:09-cv-01791 JWS, 2012 WL 1438462, at *3 (D. Ariz. Apr. 25, 2012)
20  (noting that "deliberate indifference and recklessness are similar standards"). The Court
21  will deny summary judgment with respect to the request for punitive damages on the
22  § 1983 claims.

23      **IT IS ORDERED:**

24      1.    Defendants' motion for summary judgment is **granted in part** and **denied
25  in part**. The motion is granted with respect to the claims asserted against Officer
26  Gonzales and the request for punitive damages under state law. The motion is denied in
27  all other respects.

28

2.     By separate order, the Court will set a status conference to schedule the trial and final pretrial conference.[6]

Dated this 18th day of October, 2017.

_David G. Campbell_
_____
David G. Campbell
United States District Judge

---

[6] The Court has received a letter from Plaintiffs' counsel, Sabinus Megwa, indicating that he was suspended from the practice of law for a period of 30 days effective September 29, 2017.  The Court will address this issue and the status of the case going forward at the status conference.