**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ngozi Mbegbu, individually as the surviving spouse of decedent Balantine Mbegbu and on behalf of decedent's child Ogechukwu Amarachukwu Gloria Mbegbu as the statutory beneficiary of Balantine Mbegbu; and as Personal Representative of the Estate of Balantine Mbegbu,<br><br>Plaintiffs,<br><br>v.<br><br>City of Phoenix, Matthew Johnson, Joel Zemaitis, William Weber, and John and Jane Doe Spouses,<br><br>Defendants. | No. CV16-0424-PHX-DGC<br><br>**ORDER** |

This case arises out of the death of Balantine Mbegbu, who died in his home during an incident with Phoenix police officers. His surviving spouse, Plaintiff Ngozi Mbegbu, brings a state law tort claim for wrongful death and § 1983 claims for excessive force and loss of familial association in violation of the Fourth and Fourteenth Amendments. Doc. 1. The tort claim is brought against the City of Phoenix and the officers, and the § 1983 claims are asserted against the individual officers only. Plaintiff seeks compensatory and punitive damages. Doc. 1-1 at 3-14.

On October 18, 2017, the Court granted summary judgment on all claims in favor of one officer, but denied Defendants' motion for summary judgment in all other respects.

Doc. 58. The Court then granted Plaintiff's motion to substitute counsel and granted her request to reopen discovery after her original counsel clearly failed to provide competent representation. Docs. 62, 64, 69. On July 3, 2018, the Court held a conference with the parties. Doc. 112. Defendants requested a second round of summary judgment briefing, arguing that the reopening of discovery had illuminated several issues that might affect the Court's ruling. *Id.* at 5-7. The Court permitted Defendants to supplement their first summary judgment motion (Docs. 47) to identify specific grounds upon which the Court's ruling might be different in light of the developed record (Doc. 112 at 13). That supplemental briefing is now before the Court and oral argument will not aid in the Court's decision. Docs. 110, 114, 116. For the following reasons, the Court will deny Defendants' summary judgment motion.

**I. Background.**

Viewing the evidence in the light most favorable to Plaintiff for purposes of summary judgment, the facts are as follows. On the evening of October 6, 2014, the decedent Mbegbu was at home with Plaintiff and Plaintiff's sister. Doc. 52-2 at 23. At approximately 9:11 p.m., Officers Gonzales and Johnson responded to a 911 call from Mbegbu's friend, who had concerns that a fight between Plaintiff and Mbegbu might escalate. Doc. 48 at 2. Officers arrived at the residence and approached Plaintiff on the street outside her home as she was leaving to pick up her son. Doc. 48-3 at 19. The officers explained the reason for their visit, and Plaintiff assured the officers that she was fine. *Id.* Plaintiff let the officers inside the home and began showing them pictures of her children. The parties dispute whether Plaintiff invited the officers in or whether they requested entrance and Plaintiff only assented. Docs. 48 at 3; 53 at 2.

When Officers Gonzales and Johnson entered, Mbegbu was sitting in the living room eating dinner. Doc. 48-3 at 20. He was surprised to see the officers and asked why they were there and if they were going to kill him. Doc. 52-2 at 23. The officers said someone had called about a domestic dispute, but Mbegbu explained that nothing had happened. Doc. 52-2 at 22-23. The parties dispute whether Mbegbu remained seated or

immediately rose and approached the officers. *See* Docs. 48 at 3; 53 at 2. Plaintiff asserts that Mbegbu remained seated until a third officer arrived. Doc. 52-2 at 23-25.

The parties dispute whether Mbegbu was yelling or the officers confused his stammer with raising his voice. Docs. 52-2 at 22-23; 48 at 5. Gonzales radioed for back up and Officers Zemaitis and Weber arrived at the scene. Docs. 48-3 at 21; 48-4 at 2. Johnson then discussed the situation with the other officers and informed Mbegbu that he was under arrest. Mbegbu pulled his arm away when Johnson attempted to handcuff him, and he was struck in the face by Johnson during the ensuing arrest. Doc. 48-3 at 55-56.

Without warning, Zemaitis tased Mbegbu in the face and chest. Doc. 48-3 at 56-57, 127. After the first tasing, which lasted eleven seconds, Mbegbu exclaimed: "I'm dying, I'm dying." Doc. 52-2 at 24. Zemaitis tased Mbegbu a second time for six seconds. Doc. 48-3 at 5-6, 73. Weber then threw Mbegbu to the ground with the help of Johnson and Zemaitis, and Mbegbu began to bleed. Doc. 48-3 at 94-96; Doc. 52-2 at 25. Johnson put his knee on the back of Mbegbu's neck and pressed his thumb behind Mbegbu's ear as a pressure point. Doc. 48-3 at 57-58. Weber knelt on Mbegbu's back and he and Johnson pulled Mbegbu's arms back and handcuffed him. Docs. 48-3 at 94-96; 52-2 at 25-26.

When the officers sat him up, Mbegbu slumped over and did not appear to be breathing. Doc. 52-2 at 25-26. The officers removed the handcuffs and began CPR. Doc. 48-3 at 58-59. Paramedics took Mbegbu to the hospital, where he was pronounced dead.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Summary Judgment.**

Defendants argue that additional discovery and case developments entitle them to summary judgment for three reasons: (1) Plaintiff's testimony is incompetent, (2) medical causation does not support an injury,[1] and (3) the officers' use of force was not excessive and they are entitled to qualified immunity. Doc. 110 at 1. Defendants' supplemental brief contains five pages of what is characterized as "new factual information." Doc. 110 at 2-6. The Court will address only the specific grounds that Defendants identify for granting summary judgment. *See* Doc. 112 at 12-13; *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

**A. Competency of Plaintiff's Testimony.**

During the conference on July 3, 2018, Defendants argued that Plaintiff's deposition testimony was likely incompetent due to English being her second language. Plaintiff's counsel agreed that there were questions about how much Plaintiff understood in her deposition, but disagreed that this had any effect on summary judgment. Doc. 112 at 10-11. Defendants now argue that the Court's previous summary judgment order "put great weight" on Plaintiff's inadmissible testimony and accordingly cannot stand. Doc. 110 at 6-7. For three reasons, the Court does not agree.

---

[1] Defendants initially state that "medical causation does not support a constitutional injury" (Doc. 110 at 1), but they challenge the Court's summary judgment order only with respect to Plaintiff's wrongful death claim under A.R.S. § 12-611 (*see id.* at 8-9).

- 4 -

First, Defendants did not raise this issue in their previous motion for summary judgment or reply, even though they had taken Plaintiff's deposition and knew the Court likely would consider it in ruling on the summary judgment motion. *See* Docs. 47, 56.[2]

Second, the Court does not agree that it relied heavily on Plaintiff's testimony in its summary judgment ruling. The Court considered it, but also considered a range of other evidence. *See* Doc. 58.

Third and most importantly, Defendants have not shown that the specific portions of Plaintiff's testimony cited by the Court's previous order are unreliable. Defendants cite three examples in Plaintiff's deposition that they claim show unreliability and confusion. Doc. 110 at 7. Defendants cite Plaintiff's testimony that Mbegbu was sprayed with OC spray, that officers deployed the Taser in his eyes, and that he kicked involuntarily in response to the Taser. Defendants argue that these events never happened, but they cite no evidence for that contention and fail to show that Plaintiff's answers were the result of confusion. *See* Docs. 52-2 at 4-5; 110 at 7. The Court construes the evidence in Plaintiff's favor in deciding a motion for summary judgment. A dispute of fact is not a basis for finding Plaintiff's testimony unreliable.

Defendants also cite Plaintiff's testimony that she saw blood on the floor from Mbegbu's head. *See* Doc. 52-2 at 9. Defendants contend that witness testimony and photographs of the room contradict this testimony and show her unreliability. Doc. 110 at 7. But Defendants fail to show how the Court's previous order relied on Plaintiff's testimony on this point, and Defendants previously have acknowledged bleeding on Mbegbu's head "that [wa]s consistent with Officer Johnson's first strike." Doc. 47 at 15. Whether blood was on the floor is a dispute of fact to be resolved at trial.

Last, Defendants cite Plaintiff's inability to identify which officers took which actions. Although Plaintiff could not recall which officer did every action to her husband, she thought she remembered the sequence of officers arriving, she could narrow down

---

[2] In a footnote, Defendants' reply challenged whether Plaintiff's testimony about the event was accurate, but Defendants did not argue that her entire testimony was incompetent as they do now. Doc. 56 at 7 n.2.

which officers did not do certain actions, and she recalled the relative size of the officers compared to her husband. *See, e.g.*, Doc. 52-2 at 5, 7-8, 11. It simply is incorrect that Plaintiff was "completely unable to identify what any of the officers did." Doc. 110 at 7.

Other than the exchange during the conference with the Court on July 3, 2018, in which Plaintiff's counsel disputed that Plaintiff's language issues provided a basis for revisiting summary judgment, Defendants cite no basis for the Court to conclude that the testimony cited in its previous order is unreliable. And it was defense counsel who took this deposition. If they thought Plaintiff was confused and giving inaccurate testimony, they should have adjourned the deposition until a different interpreter could be found. That Defendants terminated a second attempted deposition with Plaintiff for this very reason shows their awareness of the issue. Doc. 112 at 5. Instead, they completed the first deposition, moved for summary judgment, did not assert unreliability in the testimony during the summary judgment briefing, and only now contend that the testimony is so unreliable as to be inadmissible. The Court will not grant Defendants summary judgment on that basis.

### B. Wrongful Death Causation.

Under Arizona law, an action for wrongful death is a statutory negligence action requiring a showing that the alleged tortfeasor breached a reasonable standard of care. *See* A.R.S. §§ 12-611, 12-612. "[W]hen multiple tortfeasors are alleged to have created an indivisible injury and each defendant's causal role is potentially indeterminable, such causal uncertainty will not prevent a plaintiff from recovering altogether." *Salica v. Tucson Heart Hosp.-Carondelet, LLC*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010). To avoid inequities under such circumstances, Arizona has adopted the "substantial factor" test to determine causation, which asks whether "the defendant's actions were a 'substantial factor' in producing the injury." *Id.*; *see also Heck v. City of Lake Havasu*, No. CV 04–1810–PCT–NVW, 2006 WL 2460917, at *11-*12 (D. Ariz. Aug. 24, 2006) (denying summary judgment where jury could infer from circumstantial evidence that carbon monoxide contributed to drowning death).

In its order denying summary judgment, the Court found that triable issues existed as to whether the officers caused Mbegbu's death. Doc. 58 at 19. Defendants now argue that Plaintiff cannot prove causation, and specifically that no medical evidence supports Plaintiff's theory of death by asphyxiation. Doc. 110 at 8. Defendants cite two parts of the record as support: (1) testimony from Dr. Stano, the medical examiner, that he could not testify to a reasonable degree of medical probability that asphyxia was the cause of Mbegbu's death; and (2) testimony by Dr. Peters, Plaintiff's hired medical examiner, agreeing that no objective medical findings support Plaintiff's asphyxia theory. Doc. 110 at 8-9.

Plaintiff disputes Defendants' characterization of Dr. Stano's testimony. Doc. 114 at 2. Plaintiff cites Dr. Stano's testimony that he believes compressive asphyxia was a possible component in the cause of death (Doc. 114-1 at 24), and his testimony discussing circumstances consistent with compressive asphyxia which were present in Mbegbu's case (*id.* at 24, 29-33). Plaintiff also cites Dr. Stano's testimony that compressive asphyxia can occur without resulting in fracturing, internal trauma, or other physical findings. Docs. 114 at 2; 114-1 at 30-31. The Court further notes that Dr. Stano answered "no" in response to the following question:

> Had Mr. Mbegbu not been subdued, inclusive of a fist strike, multiple Tasings, prone position on the ground, weight on his back, weight on his neck, and his heels brought up to his rear end, do you believe to a reasonable degree of medical certainty that he would have died that day?

Doc. 114-1 at 28.

The Court finds that triable issues of fact exist regarding whether the officers were substantial factors in causing Mbegbu's death. Plaintiff and Defendants dispute the significance of and reasonable inferences to be drawn from Dr. Stano's testimony about the cause of death. But viewing the evidence in the light most favorable to Plaintiff, a jury reasonably could find that the cause of death was compressive asphyxiation due to all or some of the officers' conduct. *See Barrett v. Harris*, 86 P.3d 954, 958 (Ariz. Ct. App. 2004) ("Causation is generally a question of fact for the jury unless reasonable persons

could not conclude that a plaintiff had proved this element."). Circumstantial evidence may support a finding of causation under Arizona's wrongful death statute.[3] *See Heck*, 2006 WL 2460917, at *11-*12.

### C. Qualified Immunity and Excessive Force.

The Court's first summary judgment order set out the qualified immunity and excessive force standards and addressed Defendants' arguments in depth. *See* Doc. 58. Defendants again argue that the officers are entitled to qualified immunity and that their use of force was not excessive. Doc. 110 at 10-14. But Defendants identify no new factual information that justifies summary judgment in their favor. Instead, their arguments rely on the same disputed facts – construed in Defendants' favor – that the Court considered when it previously denied summary judgment. *See id.*; Doc. 58 at 4-14.

Viewing the evidence in the light most favorable to Plaintiff, the Court still cannot determine that the officers are entitled to qualified immunity, nor that the force used against Mbegbu was reasonable as a matter of law. *See* Doc. 58 at 11-13. In excessive force cases where the alleged victim died during an encounter with police officers, the Ninth Circuit has noted that "summary judgment should be granted sparingly" and "[c]ourts should be wary" of taking the question away from the jury. *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 783675, at *5 (D. Ariz. Feb. 8, 2018) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 n.3 (9th Cir. 2014)). The Court will deny Defendants' motion.

**IT IS ORDERED** that Defendants' motion for summary judgment (Docs. 47, 110) is **denied** as explained above and in Doc. 58. The Court will hold a telephonic conference on **December 20, 2018 at 3:00 p.m.** to set dates for trial and the final pretrial conference in this matter. Counsel for Plaintiff shall initiate a conference call to include counsel for

---

[3] Defendants also challenge whether Plaintiff's hired medical examiner, Dr. Peters, is qualified to opine on asphyxia. Doc. 110 at 3, 7-8, n.1-n.2. Because the Court finds that disputes of fact preclude summary judgment with respect to Dr. Stano's testimony, the Court will decline to address Dr. Peters' testimony or Defendants' other arguments. As the Court has previously noted, Defendants will have an opportunity to file Daubert motions challenging Plaintiff's experts. Doc. 112 at 17.

- 8 -

all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall circulate the dial-in information to counsel for all parties and the Court no later than December 19, 2018 at 12:00 noon.

Dated this 10th day of December, 2018.

David G. Campbell
Senior United States District Judge