**MUSHKATEL, ROBBINS & BECKER, PLLC**
15249 N. 99th Avenue
Sun City, Arizona 85351
Telephone: (623) 889-0691
Firm Email: Firm@phoenixlawteam.com
Zachary Mushkatel (#023377)
Laura Still (#026115)
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Ngozi Mbegbu, individually as the surviving spouse of decedent Balantine Mbegbu and on behalf of decedent's children Ogechukwu Amarachukwu Gloria Mbegbu and C.C.E.M (a minor) as the statutory beneficiaries of Balantine Mbegbu; and as Personal Representative of the Estate of Balantine Mbegbu,**<br><br>**Plaintiffs.**<br><br>v.<br><br>**City of Phoenix, et al.,**<br><br>**Defendants.** | Case No. 2:16-cv-00424-DGC<br><br>**PLAINTIFFS' MOTION IN LIMINE TO LIMIT THE OPINIONS OF CHARLES WETLI, M.D.**<br><br>**(Assigned: Hon. David G. Campbell)** |

Plaintiffs, by and through undersigned counsel, hereby move this Court to limit the opinions of Charles Wetli, M.D. Plaintiffs adopt the Statement of Facts Common to Motions *in Limine* to Limit the Defendants' Experts as if set forth herein in full.

**I. Qualifications**

Dr. Wetli is a board-certified forensic pathologist. He received his Bachelor of Science degree in prep-professional studies with a concentration in chemistry from the

University of Notre Dame. Dr. Wetli received his medical degree from St. Louis University School of Medicine. *See* **Ex. 1, Wetli CV COP_BM002146-2170.**

**II.     Dr. Wetli's Report**

Dr. Wetli was retained by Defendants to opine on the mechanism of Balantine Mbegbu's death, and whether the actions of the police caused or contributed to his death. *See* **Ex. 2, Wetli Report at COP_BM002142**. Despite identifying this limited scope, Dr. Wetli utilizes his report to advance a biased reading of the historical fact, and more importantly, improperly overextends his opinion into the forum of behavioral psychology, psychiatry and toxicology. *Id.* Half of Dr. Wetli's three (3) page report consists of factual recitation. Thereafter, Dr. Wetli improperly discusses effects of cyclobenzaprine (Flexiril) usage lacking the expertise, credentials, and necessary experience to do so. *Id.* Next, Dr. Wetli addresses the defendant officers' conduct and the Taser discharge *Id.* His scant review includes conclusions regarding Taser safety absent any specific literary, scientific or experiential reference. Dr. Wetli proceeds by summarily dismissing Mr. Mbegbu's prone positioning by concluding that such positioning actually facilitates breathing. *Id.* He pens this conclusion without authority, consideration of the weight of compression upon Mr. Mbegbu, mention of duration duration of the Taser discharge or weight of compression upon Mr. Mbegbu, identification of methodology of review, experience with similar case studies (60+ year old men with sickle cell trait, etc.) or any other substantive basis for his conclusion. Instead, Dr. Wetli attempts to assign an "excited delirium" theory of death despite minimal crossover of symptomology, medical evidence, and a void of case-specific factual consideration. *Id.*

Regardless of the aforementioned significant deficiencies, Dr. Wetli concluded: 1) the actions of the police officers (including discharges from a conducted electrical weapon, physical strikes, restraint, and prone position) did not cause or contribute to the death of Mr. Mbegbu ("Opinion #1"); 2) Mr. Mbegbu's behavior, aggression, and resistance to the police were likely the result of toxicity from cyclobenzaprine ("Opinion #2"); and 3) exertional sickling as a result of lactic acidosis from the struggle, and the accompanying surge of nor-epinephrine upon the struggle ending, was a contributing factor to Mr. Mbegbu's death ("Opinion #3"). *Id.* **at COP_BM002143.**

The instant Motion requests that the following portions of Dr. Wetli's opinions be precluded: 1) any mention or discussion of behavioral impacts of Cyclobenzaprine, also known as Flexiril; 2) any suggestion that "excited delirium" caused or contributed to Mr. Mbegbu's death; 3) any and all discussion as to a Taser's physiological impacts; 4) any and all opinions regarding prone positioning; and, 5) any suggestion that sickle cell contributed to Mr. Mbegbu's death.

**III.     Legal Standard and Argument**

    A.     <u>Federal Rule of Civil Procedure Rule 26</u>

Federal Rule of Civil Procedure 26(a)(2)(B) ("Fed. R. Civ. P") requires that experts submit a written report, prepared and signed by the expert, including: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts of data considered by the witness in forming them and (iii) any exhibits that will be used to summarize and support them."

An expert's report must be "detailed and complete … stating the testimony the witness is expected to present during direct examination, together with the reasons stated

3

therefor." Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendment*; see also*, *Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980). The report's purpose is to obviate the need for an expert deposition. *Burk v. State Farm Fire & Cas. Ins. Co.*, CV-14-02642-PHX-SMM, 2017 WL 4676588, at *2 (D. Ariz. Mar. 27, 2017).

B.  Federal Rule of Evidence 702

The method, facts and experience relied upon in arriving at an expert's conclusion must be included in the report. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-593 (1993). Federal Rules of Evidence 702 ("Fed. R. Evid.") requires that an expert apply methodological principles (or experience) reliably to the facts of the case. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Dr. Wetli is required to show that his conclusions are the result of using experience, scientific methods and procedures, "and that those conclusions were not mere subjective beliefs or unsupported speculation." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). The standard set forth in Fed. R. Evid. 702 and *Daubert* mandates the district court is required to serve as a "gatekeeper" to protect juries from being exposed to unreliable or misleading scientific testimony. *Daubert*, 509 U.S. at 592-593. This role now extends to all expert testimony as opposed to solely scientific testimony by an expert. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 152 (1999).

The subject expert testimony must be excluded if either unreliable or irrelevant. *See Kumho Tire*, 526 U.S. at 141; *see also*, *Daubert*, 509 U.S. at 591-595. The proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. Fed. R. Evid. 702. This court is required to

engage in a "holistic" analysis of the expert's testimony. *See United States v. W.R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007). In doing so, the expert's opinion testimony (report) must be reviewed for "overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *W.R. Grace*, 504 F.3d at 765. If a large analytical gap exists between the data and the opinion proffered, the trial court may properly exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The report must be complete enough such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources. *See Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Furthermore, "… an opposing party is not required to file a motion to compel or depose the expert in order to develop what her opinion is or the reasons for it." *In re Cent. European Indus. Dev. Co.*, 427 B.R. 149, 158-159 (Bankr. N.D. Cal. 2009), *citing Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 811 (D. Del. 2003); *Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 160 (D. Me. 2003); and Stephen D. Easton, *Attacking Adverse Experts* 48, 58–59 (ABA Publishing 2008).[1]

C. <u>Dr. Wetli's Report Fails to Satisfy *Daubert*, Fed. R. Evid. 702, and Fed. R. Civ. P. 26</u>

---

[1] "If you believe the report is deficient, you again have to make a decision from among several options. Your options include the following: Do nothing, and later filing a motion to exclude the adverse expert's testimony, or a portion of it;" "If you receive a faulty expert witness report, sometimes the best option … is to do nothing at all for the time being, then file a motion later to exclude the expert's testimony." Easton, *Attacking Adverse Experts* at 58–59

1) Dr. Wetli's Conclusions Regarding Cyclobenzaprine Lack Substantive Analysis

Dr. Wetli's three (3) page report offered only the following as to his reasoning, research, authority, methodology and conclusions regarding cyclobenzaprine:

> Cyclobenzaprine (Flexural, Lisseril) is a centrally acting skeletal muscle relaxant. Toxic effects associate with prolonged usage or over dosage have included agitation and psychosis. The high level detected in postmortem blood may well have been the cause of his aggressive behavior.

***Id.* at COP_BM002142.**

Notably, Dr. Wetli provides neither authority nor indication as to what constitutes a "high level." *Id.* Furthermore, Dr. Wetli's report is silent as to how or why he presumes that Mr. Mbegbu's administration of cyclobenzaprine qualified as "prolonged" or why his blood levels on the day of his death qualify as an "over-dosage." No records, literature or personal qualifications to offer such opinions are provided in the report.

Equally relevant, Dr. Wetli is a forensic pathologist. His substantial *Curriculum Vitae* lacks any accreditation, previous employment or authorship focused upon cyclobenzaprine, dosages, durations of consumption or behavioral symptoms therefrom. **Ex. 1.** He is simply not qualified to opine that "the high level detected in postmortem blood may well have been the cause of his aggressive behavior." ***Id.* at COP_BM002142.** Defendants retained psychiatrist Mace Beckson, presumably to cover this issue (though he did not). *See* **Ex. 3 Defendants' Fifth Supplemental Disclosure Statement at P. 35-36.** To summarize, the substance of Dr. Wetli's report is wholly deficient in satisfying Fed. R. Evid. 702, Fed. R. Civ. P. 26, and *Daubert*.

2) Report Insufficient to Assert "Excited Delirium" Caused or Contributed to Death

Dr. Wetli concludes that "a likely mechanism of death would be similar to those victims of a syndrome known as excited delirium." **Ex. 2 at COP_BM002142.** Beyond being overtly vague, no basis in science or fact for this conclusion is provided in the report. *Id.* Instead, Dr. Wetli points to common behavioral traits of those suffering from excited delirium. *Id.* He describes the phenomena as frequently being violent, psychotic, and unresponsive to pain compliance techniques with unexpected strength and endurance. *Id.* Dr. Wetli ignores that his own literature associates this delirium with people decades younger than sixty-five (65) year old Mr. Mbegbu. **Ex. 1 at COP_BM002158, Wetli, C.V.: Fatal Cocaine Intoxication – A Review,** *Amer. J. Forensic Med. And Pathol* **8:1-2, 1987**.

Additionally, excited delirium, a commonly raised defense in excessive force cases, is most commonly associated with individuals with a median age of thirty-six (36), under the influence of cocaine, amphetamine or other psychotropic drugs. *See* **Ex. 4** *American College of Emergency Physicians (2009)*, **''White paper report on excited delirium syndrome'', ACEP Excited Delirium Task Force, American College of Emergency Physicians, Irving, TX at P. 10.** Further, excited delirium is frequently accompanied by extreme body temperature, sweating and incoherence. *Id.* **at P. 7.** No evidence of cocaine, methamphetamine or other mind-altering drugs exists under the relevant facts. Dr. Wetli ignores that Mr. Mbegbu was cogent, not sweating, exhibited none of the physical descriptors, and was actually responsive to Officer Johnson's command to sit down. *See* **Ex. 5, Johnson Dep P. 68-69.** Rather, in four (4) sentences, Dr. Wetli articulates his conclusion, cherry picks broad descriptions of excited delirium and describes cessation of vital signs. **Ex 2 COP_BM002142-2143.** Dr. Wetli fails to

align pertinent facts of this case to his conclusion; fails to provide a scientific methodology utilized in arriving at his conclusion; fails to identify physical manifestations of his stated conclusion as applicable to Mr. Mbegbu, and thus, fails to satisfy the *Daubert* standard.

        3)       Any and all discussion as to a Taser's physiological impacts

Dr. Wetli's report veers into the realm of TASER and its effects upon humans. He discounts the possibility that the use of the TASER in this matter contributed to Mr. Mbegbu's death. *Id.* **at COP_BM002142.** Yet, Defendants have named Dr. Vilke as their TASER expert (whose opinion focuses substantially upon Tasers and their lethality). **Ex. 3 at P. 27-28**. Thus, Dr. Wetli's discussion is cumulative and should be barred.

        4)       Any and All Opinions regarding Prone Positioning Should be Excluded

Dr. Wetli dismisses prone positioning as a cause or contributing factor of Mr. Mbegbu's death in a total of two (2) sentences of discussion. **Ex. 2 at COP_BM002142.** This brief discussion does not assess weight, positioning, duration, Mr. Mbegbu's pre-existing conditions, witness observations, deposition testimony or any other fact in this case. He describes the theory of prone positioning as a cause of death as "debunked" absent citation to literature, tests, methods, facts or even a tangential source. *Id.* In other words, he never states why he holds the opinions he holds. *See Daubert,* 509 U.S. at 592-593. As such, Dr. Wetli's opinions as to prone positioning should be precluded.

        5)       Any Suggestion that Sickle Cell Contributed to Mr. Mbegbu's Death Should be Excluded

Much like the other portions of his report, Dr. Wetli's discussion of sickle cell trait as a contributing factor of Mr. Mbegbu's death describes "sickle cell trait" without

providing analysis, explanation or indication of what, if any, role sickle cell played. Dr. Wetli indicates that sickle cell can cause serious illness or sudden death but fails to identify how or why he thinks sickle cell caused or contributed to Mr. Mbegbu's death. *Id.* **at COP_BM002143**. The report provides a minimal description of sickle cell trait and then concludes it was a contributing cause to Mr. Mbegbu's death *Id.* Dr. Wetli indicates that exertional sickling most frequently takes place in military training or physical exertion related to law enforcement incidents. *Id.* He is silent as to the data relied upon, the duration of exertion necessary to trigger exertional sickling or how to diagnose whether exertional sickling caused or contributed to death. Finally, Dr. Wetli's vitae is void of any overt training in exertional sickling or linking the trait to one's cause of death. **Ex 2.** The four (4) sentence discussion of sickle cell in the report does not pass *Daubert* muster, and thus, should be precluded.

**IV.    Conclusion**

Dr. Wetli's report contains a myriad of conclusions and opinions beyond the disclosed scope of his expertise that are devoid of the supporting basis and evidence required by Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*. Absent from the report are citations to literature, tests, methods, facts, records, personal qualifications, a basis in science or fact, or personal experience from which his opinions stem. The blatant deviation from the long-held requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*, require the preclusion of the following portions of the report:

1) Any mention or discussion of behavioral impacts of Cyclobenzaprine, also known as Flexiril;

2) Any suggestion that "excited delirium" caused or contributed to Mr. Mbegbu's

9

1) death;

3) Any and all discussion as to a Taser's physiological impacts;

4) Any and all opinions regarding prone positioning caused or contributed to Mr. Mbegbu's death; and

5) Any suggestion that sickle cell contributed to Mr. Mbegbu's death.

A *Daubert* hearing on Dr. Wetli's report and anticipated trial testimony is inappropriate if the purpose is intended to permit the subject witness, Dr. Wetli, to disclose his previously unknown methodology in the waning months before trial. Defendants may suggest that Plaintiffs could have utilized written discovery to ferret out omissions to cure the deficiencies identified herein. Plaintiffs request the Court to take preemptive notice that when the Court graciously reopened disclosure, written discovery was not a discovery tool made available. Because no duty exists upon Plaintiffs to depose Dr. Wetli (*Salgado*, *In re Cent. European Indus. Dev. Co.*, *Bonesmo*, *Net 2 Press, Inc.*, and Easton, *Attacking Adverse Experts*) and written discovery was not an option available to Plaintiffs, Defendants' failure to conform to and satisfy the requirements of Fed. R. Civ. P. 26 should not be curable via a *Daubert* hearing. Providing Defendants an opportunity to ignore the clear requirements to Fed. R. Civ. P. 26 for more than two (2) years and permit an eleventh (11th) hour remedy would be deeply prejudicial to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request the Court to issue an Order:

A. Granting *Plaintiffs' Motion in Limine to Limit the Opinions of Charles Wetli, M.D.*

B. Finding the portion(s) of the report prepared by Charles Wetli, M.D.

1 regarding the behavioral impacts of Cyclobenzaprine fails to meet the requirements of

2 Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

3     C.    Precluding the inclusion of the portion(s) of the report prepared by Charles

4 Wetli, M.D. regarding the behavioral impacts of Cyclobenzaprine from admission at trial.

5     D.    Precluding testimony regarding the portion(s) of the report prepared by

6 Charles Wetli, M.D. regarding the behavioral impacts of Cyclobenzaprine from being

7 offered at trial.

8     E.    Precluding Charles Wetli, M.D. from testifying at trial regarding his

9 opinion and/or the basis of his opinion regarding the behavioral impacts of

10 Cyclobenzaprine.

11     F.    Finding the portion(s) of the report prepared by Charles Wetli, M.D.

12 suggesting that "excited delirium" caused or contributed to Balantine Mbegbu's death

13 fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

14     G.    Precluding the inclusion of the portion(s) of the report prepared by Charles

15 Wetli, M.D. suggesting that "excited delirium" caused or contributed to Balantine

16 Mbegbu's death from admission at trial.

17     H.    Precluding testimony regarding the portion(s) of the report prepared by

18 Charles Wetli, M.D. suggesting that "excited delirium" caused or contributed to

19 Balantine Mbegbu's death from being offered at trial.

20     I.    Precluding Charles Wetli, M.D. from testifying at trial regarding his

21 opinion and/or the basis of his opinion concerning "excited delirium" as a cause or

22 contributing cause to Balantine Mbegbu's death.

23     J.    Finding the portion(s) of the report prepared by Charles Wetli, M.D.

1 regarding a Taser's physiological impacts fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

K. Precluding the inclusion of the portion(s) of the report prepared by Charles Wetli, M.D. regarding a Taser's physiological impacts from admission at trial.

L. Precluding testimony regarding the portion(s) of the report prepared by Charles Wetli, M.D. regarding a Taser's physiological impacts from being offered at trial.

M. Precluding Charles Wetli, M.D. from testifying at trial regarding his opinion and/or the basis of his opinion concerning a Taser's physiological impacts.

N. Finding the portion(s) of the report prepared by Charles Wetli, M.D. suggesting prone positioning caused or contributed to Balantine Mbegbu's death fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

O. Precluding the inclusion of the portion(s) of the report prepared by Charles Wetli, M.D. suggesting prone positioning caused or contributed to Balantine Mbegbu's death from admission at trial.

P. Precluding testimony regarding the portion(s) of the report prepared by Charles Wetli, M.D. suggesting prone positioning caused or contributed to Balantine Mbegbu's death from being offered at trial.

Q. Precluding Charles Wetli, M.D. from testifying at trial regarding his opinion and/or the basis of his opinion suggesting prone positioning caused or contributed to Balantine Mbegbu's death.

R. Finding the portion(s) of the report prepared by Charles Wetli, M.D. suggesting sickle cell contributed to Balantine Mbegbu's death fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

S. Precluding the inclusion of the portion(s) of the report prepared by Charles Wetli, M.D. suggesting sickle cell caused or contributed to Balantine Mbegbu's death from admission at trial.

T. Precluding testimony regarding the portion(s) of the report prepared by Charles Wetli, M.D. suggesting sickle cell caused or contributed to Balantine Mbegbu's death from being offered at trial.

U. Precluding Charles Wetli, M.D. from testifying at trial regarding his opinion and/or the basis of his opinion suggesting sickle cell caused or contributed to Balantine Mbegbu's death.

V. Granting such other and further relief as the Court may deem just and necessary.

**RESPECTFULLY SUBMITTED THIS** 15th day of February, 2019.

MUSHKATEL, ROBBINS & BECKER, PLLC

By: *//s// Zachary Mushkatel*
 Zachary Mushkatel
 Laura Still
 *Attorneys for Plaintiffs*

…

…

…

…

…

…

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Christina Gail Retts**
**cretts@wienekelawgroup.com**

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

By: *//s// Nicole Roberson*