**MUSHKATEL, ROBBINS & BECKER, PLLC**
15249 N. 99th Avenue
Sun City, Arizona 85351
Telephone: (623) 889-0691
Firm Email: Firm@phoenixlawteam.com
Zachary Mushkatel (#023377)
Laura Still (#026115)
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Ngozi Mbegbu, individually as the surviving spouse of decedent Balantine Mbegbu and on behalf of decedent's children Ogechukwu Amarachukwu Gloria Mbegbu and C.C.E.M (a minor) as the statutory beneficiaries of Balantine Mbegbu; and as Personal Representative of the Estate of Balantine Mbegbu,**<br><br>**Plaintiffs.**<br><br>v.<br><br>**City of Phoenix, et al.,**<br><br>**Defendants.** | Case No. 2:16-cv-00424-DGC<br><br>**PLAINTIFFS' MOTION IN LIMINE TO LIMIT THE OPINIONS OF GARY M. VILKE, M.D.**<br><br>**(Assigned: Hon. David G. Campbell)** |

Plaintiffs, by and through undersigned counsel, hereby move this Court to limit the opinions of Gary M. Vilke, M.D. Plaintiffs adopt the Statement of Facts Common to Motions *in Limine* to Limit the Defendants' Experts as if set forth herein in full.

**I.   Dr. Vilke's Report**

Defendants offer Dr. Gary M. Vilke to opine as to whether the restraining process or the TASER utilized by the various defendant officers caused or contributed to Balantine Mbegbu's death. *See* Ex. 1, Def. Fifth Supp. Disc. Stmt. P. 27-28. Dr. Vilke's

report provides clear conclusions, but fails to specify any authority, methodology, particular experience or peer review studies utilized in reaching said conclusions. Said otherwise, he failed to demonstrate that his conclusions are the result of using experience, scientific methods and procedures, "and that those conclusions are not mere subjective beliefs of unsupported speculation." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). As such, this Motion seeks to exclude the entirety of Dr. Vilke's testimony or in the alternative, those portions applicable to compressive asphyxia and the TASER usage as a non-contributing cause of death.

## II. Legal Standard and Argument

### A. Federal Rule of Evidence Rule 702

The proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171, 175 (1987). An expert's report must provide the method, facts, and experience relied upon in reaching a conclusion. *Daubert v. Merrell Dow Pharm.*, *Inc.*, 509 U.S. 579, 592-593 (1993) ("*Daubert I*"). Federal Rules of Evidence 702 ("Fed. R. Evid.") requires the Court to ensure that the evidence proffered by the expert is relevant and reliable. *Daubert I*, 509 U.S. at 589. The trial court "must ensure that the proposed expert testimony is 'relevant to the task at hand,' ... i.e., that it logically advances a material aspect of the proposing party's case." *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1081 (D. Ariz. 2005), *citing Daubert v. Merrell Dow Pham., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"). "[T]he standard for fit is higher than bare relevance." *Friend*, 422 F. Supp. 2d at 1081, *citing In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994).

The expert report must be "a complete statement of all opinions" intended to be expressed at trial. *See* Federal Rules of Civil Procedure 26(a)(2(B)(i) ("Fed. R. Civ. P."). This Court is required to engage in a "holistic" analysis of the expert's testimony. *See United States v. W.R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007). In doing so, the expert's opinion testimony (report) must be reviewed for "overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *W.R. Grace*, 504 F.3d at 765. If a large analytical gap exists between the data and the opinion proffered, the trial court may properly exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Absent cited applicable peer review and publication, the report must explain how the expert reached conclusions, and the method must involve a scientific method practiced by, at a bare minimum, an acknowledged minority of scientists in the area. *See United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994). Scientific expert testimony introduces special dangers to the fact-finding process because it "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert I,* 509 U.S. at 595. Therefore, federal judges must exclude proffered scientific evidence under Fed. R. Evid. 702 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury. *Daubert II,* 43 F.3d at 1321.

The report must be complete enough such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources. *See Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

> […] an opposing party is not required to file a motion to compel or depose the expert in order to develop what her opinion is or the reasons for it. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 811 (D. Del. 2003); *Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 160 (D. Me. 2003) (acknowledging plaintiff's argument that defendants had other avenues available to them if they believed a discovery violation occurred, but this did not mean that defendants could not seek relief via a motion to strike); [Stephen D.] Easton, *Attacking Adverse Experts* [48] at 58–59 [(ABA Publishing 2008)] ("If you believe the report is deficient, you again have to make a decision from among several options. Your options include the following: Do nothing, and later filing a motion to exclude the adverse expert's testimony, or a portion of it;" "If you receive a faulty expert witness report, sometimes the best option … is to do nothing at all for the time being, then file a motion later to exclude the expert's testimony.").

*In re Cent. European Indus. Dev. Co.*, 427 B.R. 149, 158–59 (Bankr. N.D. Cal. 2009)

Thus, Dr. Vilke's report falls short of the Daubert standard.

    B.    <u>The Report Fails to Identify Bases for Conclusions</u>

Dr. Vilke indicates that he was hired to opine on whether the restraining process or the TASER ECD caused or contributed to Mr. Mbegbu's death. *See* Ex. 2, Vilke Report at COP_BM002035. This Motion focuses on Dr. Vilke's opinions regarding the restraining process. After a review of the facts in a light most favorable to the Defendants, Dr. Vilke opines that the police conduct did not cause or contribute to the death of Mr. Mbegbu. *Id*. Notably, Dr. Vilke isolates each act to determine if the act in and of itself caused or contributed to Mr. Mbegbu's death. He is silent as to whether the officers' cumulative conduct killed Mr. Mbegbu.

Dr. Vilke concludes:

> Given that Mr. Mbegbu was alive and resisting before, during and after the hand-cuffing, and that the cardiac arrest occurred suddenly later in time with only a minimal amount of weight being placed for a short period, the effort to restrain and handcuff him did not cause asphyxia.

4

*Id.* at COP_BM002043 & COP_BM002040.

Numerous inexplicable assumptions are embedded in this broad statement. Despite failing to identify a time of death or onset of cardiac arrest, Dr. Vilke presumes to know the precise moment of Mr. Mbegbu's death for purposes of drawing his conclusions. Dr. Vilke did not witness the officers on top of Mr. Mbegbu, yet presumes that Mr. Mbegbu was "resisting" rather than struggling to breath. *Id.* at COP_BM002043. Dr. Vilke labels the cumulative weight of the officers as "minimal" absent any calculation of the weight force or its duration. *Id.*

These presumptions are crucial to a *Daubert* analysis. If some methodology or basis for these presumptions was offered, *Daubert* could theoretically be satisfied, however, no such methodology is identified in the report. Rather, Dr. Vilke never calculated the total weight that he dismissively labels as "minimal." *Id.* Dr. Vilke's sole reference to any study or basis for his conclusion was this solitary statement: "Research using up to 220lbs. of weight on a subject's back has not shown to cause physiologic changes." *Id.* The "research" is not cited. The setting, age of subjects, duration of the weight, circumstances surrounding the weight application, pre-existing health conditions of the subjects, and manner that the weight was applied is not described or explained. *Id.* Under circumstances such as these, when a large analytical gap exists between the data and the opinion proffered, the trial court may properly exclude the testimony as unreliable. *General Elec. Co.*, 522 U.S. at 146.

Dr. Vilke opines that the cardiac arrest "occurred suddenly later in time" after the arrest. Ex. 2 at COP_BM002043. This is a medical conclusion for which no support is offered. The "struggle" was Mr. Mbegbu dying while officers continued to place

hundreds of pounds of body weight for several minutes upon Mr. Mbegbu. Yet, despite the fact that neither dialogue nor vitals monitoring occurred during the "struggle," Dr. Vilke casually concludes that Mr. Mbegbu suffered cardiac arrest "suddenly later in time." This is a loaded and vague remark void of factual support, methodological principles or explanation.

Dr. Vilke stated that, "[T]he actual time of struggle to get the handcuffs was not long enough to cause asphyxiation in and of itself." *Id.* Dr. Vilke never identifies the range of time necessary to cause asphyxiation. He never addresses whether this range varies upon the setting or the subject's biomedical markers. He never provides an estimated time during which pressure was placed upon Mr. Mbegbu. An expert's report must provide the method, facts and experience relied upon in reaching a conclusion. *Daubert I*, 509 U.S. at 592-593. As the United States Supreme Court made clear, "conclusions and methodology are not entirely distinct from one another" and nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co.*, 522 U.S. at 146. Dr. Vilke's report and opinion constitute exactly what these principles aspire to sequester from a jury's consideration.

Dr. Vilke recites purported facts regarding the technical aspects of a TASER X2 ECD but fails to provide support for the claimed information. *Id.* at COP_BM002044. Dr. Vilke reports the lack of adverse cardiac reaction to TASER ECD in "[M]ore than 1.5 million volunteer subjects," but does not provide the basis for his claim. *Id.* Dr. Vilke sets forth five (5) elements required to consider the possibility that a TASER ECD caused cardiac arrest without detailing the source for any of the five (5) elements. *Id.* at

COP_BM002045. Dr. Vilke then casually dismisses the possibility that the TASER ECD caused cardiac arrest in Mr. Mbegbu by stating that "the majority of these facts are not present." *Id.* As with the other facts and analysis of the TASER ECD, the report is devoid of citations to methods or experience Dr. Vilke relied upon to determine the five (5) elements, the facts he considered, and the analysis behind the opinion that the TASER ECD did not contribute to Mr. Mbegbu's cardiac arrest and death. *Id.* at COP_BM002045. The report's discussion of the correlation between the Defendant officers' use of a TASER ECD and Mr. Mbegbu's cardiac arrest and death fails the *Daubert* standard. Due to the large analytical gap between the unsupported data and the opinion/conclusion offered in the report, the Court may exclude Dr. Vilke's testimony on the TASER ECD as unreliable. *General Elec. Co.*, 522 U.S. at 146.

**III. Conclusion**

Dr. Vilke's report comprises of a collection of unsupported conclusions and opinions in violation of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*. Dr. Vilke's baseless opinions are not accompanied by the required disclosure of the experience, scientific methods and procedures upon which the opinions are founded. Dr. Vilke's report relies upon unsubstantiated assumptions and is essentially an assortment of "mere subjective beliefs of unsupported speculation." *Claar*, 29 F.3d at 502. The obvious deviation from the long-held requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert* warrant the preclusion at trial of Dr. Vilke, his report, and his opinions in their entireties. At a minimum, Dr. Vilke's opinions and the portions of his report pertaining to compressive asphyxia and the TASER usage as a non-contributing cause of Mr. Mbegbu's death should be precluded at trial.

Furthermore, a *Daubert* hearing on Dr. Vilke's report and anticipated trial testimony is inappropriate if the purpose is intended to permit the subject witness, Dr. Vilke, to disclose his previously unknown methodology in the waning months before trial. Defendants may suggest that Plaintiffs could have utilized written discovery to ferret out omissions to cure the deficiencies identified herein. Plaintiffs request the Court to take preemptive notice that when the Court graciously reopened disclosure, written discovery was not a discovery tool made available. Because no duty exists upon Plaintiffs to depose Dr. Vilke (*Salgado*, *In re Cent. European Indus. Dev. Co.*, *Bonesmo*, *Net 2 Press, Inc.*, and Easton, *Attacking Adverse Experts*) and written discovery was not an option available to Plaintiffs, Defendants' failure to conform to and satisfy the requirements of Fed. R. Civ. P. 26 should not be curable via a *Daubert* hearing. Providing Defendants an opportunity to ignore the clear requirements to Fed. R. Civ. P. 26 for more than two (2) years and permit an eleventh (11th) hour remedy would be deeply prejudicial to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request the Court to issue an Order:

A.     Granting *Plaintiffs' Motion in Limine to Limit the Opinions of Gary M. Vilke, M.D.*

B.     Finding that the report prepared by Gary M. Vilke, M.D. fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

C.     Precluding the inclusion of the report prepared by Gary M. Vilke, M.D. from admission at trial.

D.     Precluding testimony regarding the report prepared by Gary M. Vilke, M.D. from being offered at trial.

E. Precluding Gary M. Vilke, M.D. from testifying at trial.

F. In the alternative, finding the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding compressive asphyxia in relation to Balantine Mbegbu's death fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

G. In the alternative, precluding the inclusion of the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding compressive asphyxia in relation to Balantine Mbegbu's death from admission at trial.

H. In the alternative, precluding testimony regarding the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding compressive asphyxia in relation to Balantine Mbegbu's death from being offered at trial.

I. In the alternative, precluding Gary M. Vilke, M.D. from testifying at trial regarding his opinion and/or the basis of his opinion regarding compressive asphyxia in relation to Balantine Mbegbu's death.

J. In the alternative, finding the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding the TASER usage as a non-contributing cause of Balantine Mbegbu's death fails to meet the requirements of Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert*.

K. In the alternative, precluding the inclusion of the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding the TASER usage as a non-contributing cause of Balantine Mbegbu's death from admission at trial.

L. In the alternative, precluding testimony regarding the portion(s) of the report prepared by Gary M. Vilke, M.D. regarding the TASER usage as a non-contributing cause of Balantine Mbegbu's death from being offered at trial.

M.  In the alternative, precluding Gary M. Vilke, M.D. from testifying at trial regarding his opinion and/or the basis of his opinion regarding the TASER usage as a non-contributing cause of Balantine Mbegbu's death.

N.  Granting such other and further relief as the Court may deem just and necessary.

**RESPECTFULLY SUBMITTED THIS** 15th day of February, 2019.

MUSHKATEL, ROBBINS & BECKER, PLLC

By: *//s// Zachary Mushkatel*
Zachary Mushkatel
Laura Still
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Christina Gail Retts**
**cretts@wienekelawgroup.com**

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

By: *//s// Nicole Roberson*