**MUSHKATEL, ROBBINS & BECKER, PLLC**
15249 N. 99th Avenue
Sun City, Arizona 85351
Telephone: (623) 889-0691
Firm Email: Firm@phoenixlawteam.com
Zachary Mushkatel (#023377)
Laura Still (#026115)
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Ngozi Mbegbu, individually as the surviving spouse of decedent Balantine Mbegbu and on behalf of decedent's children Ogechukwu Amarachukwu Gloria Mbegbu and C.C.E.M (a minor) as the statutory beneficiaries of Balantine Mbegbu; and as Personal Representative of the Estate of Balantine Mbegbu,**<br><br>**Plaintiffs.**<br><br>v.<br><br>City of Phoenix, et al.,<br><br>**Defendants.** | Case No. 2:16-cv-00424-DGC<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' COMBINED RESPONSES TO PLAINTIFFS' *DAUBERT* MOTION TO LIMIT TESTIMONY OF GARY M. VILKE AND CHARLES WETLI, M.D.**<br><br>(Assigned: Hon. David G. Campbell) |

Plaintiffs, by and through undersigned counsel, hereby move this Court to limit the opinions of Gary M. Vilke, M.D. and Charles Wetli, M.D. and submit *Plaintiffs' Reply to Defendants' Combined Response to Plaintiffs' Daubert Motions to Limit the Opinions of Gary M. Vilke, M.D. and Charles, Wetli, M.D.*

**I.      Gary M. Vilke, M.D.**

The Motion addressing Dr. Gary Vilke focused on the "large analytical gap" between the data and the opinion preferred. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146,

(1997). Defendants' Response attempts to ameliorate this fact by discussing Dr. Vilke's *Curriculum Vitae* ("CV"). The four-page discussion embraces and argues that Dr. Vilke is qualified. Yet, Plaintiffs' motion was not concerned by Dr. Vilke's background, but rather, the void of reasoning and analysis in the report.

Defendants fail to provide an adequate explanation of this significant deficiency. Instead, Defendants inaccurately argue that Dr. Gary Vilke, "cited a litany [sic] of scientific articles on the subjects he offers opinions related to his report." Response, P. 5, ln. 7-8. Defendants later claim that, "Dr. Vilke's conclusions are also based upon his review of the scientific literature, which he cites in his report." Response, P. 8, ln. 6-7. Review of Dr. Vilke's initial Report and Rebuttal Report reveal that neither of these assertions is true. *See generally* Ex. #1, Dr. Gary Vilke's Report. *See also* Ex. #2, Dr. Vilke's Rebuttal Report. Aside from a blanket list of articles reviewed under the "Materials Reviewed" section, Dr. Vilke does not reference or cite a single article, method, or analytical process in either report. *Ids.*

Defendants' reference the entirety of the Rebuttal Report to support their assertion that Dr. Vilke discusses literature in his reasoning. Response, P. 8, ln. 9. Presumably, Defendants are referencing the following language: "The published, peer reviewed medical literature supports that the hogtie position is physiologically neutral … [P]apers supporting this are listed in my original Rule 26 report." Ex. #2 at COP_BM003455. The "papers" reference only the long list of publications provided under the "Materials Reviewed" section before the narrative report begins. Ex. #1 at COP_BM002038 – COP_BM002040. This particular section of the Rebuttal focused upon Defendants' assertion that a hogtie position is physiologically neutral—omitting discourse regarding

compression or study of comparable conditions to that of Mr. Balantine Mbegbu (ethical constraints preclude such a study). More importantly, the section was directed at rebutting Ms. Michelle Hoffman, Plaintiffs' biomedical mechanical engineer expert. The initial report provided no such reference to the laundry list of articles merely reviewed. *See generally* Ex. #1. Neither of Dr. Vilke's reports cite a particular publication for a premise, method, or conclusion. A nexus between the conclusions and the data must be explained with identification and explanation of the method of analysis. The report must explain how the expert reached conclusions. *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994). Defendants' reliance upon Dr. Vilkes' CV and a list of publications reviewed is an inadequate substitute for methodology and analysis.

**II.     Charles Wetli, M.D.**

Plaintiffs' Motion regarding Dr. Charles Wetli focused on the disconnect between the facts of this case and Dr. Wetli's conclusions. In addition, the Motion discussed the absence of any discernible method of review or cited authority in the limited analysis provided in the reports. Defendants respond by citing Dr. Wetli's list of publications. Response, P. 6. If a C.V. and a list of publications satisfied the requisite standard of federal courts as gatekeepers, then Federal Rule of Evidence ("Fed. R. Evid.") 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny would be totally unnecessary. Defendants would have the Court determine the relevance and reliability questions vis-à-vis a C.V. and list of publications. Of course, an expert must provide the bases for conclusions, the reasoning involved therein, and both must be applied to the facts of the case. Dr. Wetli failed to do so.

   A.     <u>Excited Delirium Is Not Supported By Any Data or Facts in this Case</u>

Defendants attempt to resolve Dr. Wetli's inappropriate attempt to apply an excited delirium theory of death to Mr. Mbegbu by ignoring Dr. Wetli's own research. Plaintiffs do not solely take issue with Dr. Wetli's conclusions, but rather the total disconnect between the data and the conclusion. *See* Motion, P.7. As noted in the Motion, Mr. Mbegbu did not present any of the bio-markers associated with excited delirium or its supporters as a viable cause of death. *Id.* More specifically, excited delirium is most commonly associated with the following exhibited factors:

1) Use of cocaine, amphetamines, or psychotropic drugs;

2) A median age of thirty-six (36);

3) Extreme body temperature;

4) Sweating;

5) Incoherence;

6) Extreme strength;

7) Exceptional pain tolerance;

8) Stripping of clothing;

9) Irrational violence; and

10) Exceptional violence.

*See* Ex. #3, *American College of Emergency Physicians (2009)*, ''White paper report on excited delirium syndrome'', ACEP Excited Delirium Task Force, American College of Emergency Physicians, Irving, TX at P. 10. Mr. Mbegbu was nearly sixty-five (65) years old. *See* Ex. #4, Medical Examiner Report at COP_BM000276. His blood presented no evidence of cocaine or amphetamines. *Id.* at COP_BM000282. He was clothed appropriately and responsive to the police order to sit down. *See* Ex. #5, Officer

Johnson's deposition at P. 68-69. He did not initiate physical contact with the police. *Id.* He responded appropriately to being punched. *See* Ex. #6, Officer Johnson's Garrity Statement at COP_BM00182. Mr. Mbegbu's body temperature was not abnormal and he was not sweating profusely. Ex. #5 at P. 148, ln. 14-22. The reasoning between steps in a theory must be based on objective, verifiable evidence and scientific methodology of the kind traditionally used by experts in the field. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (*citing Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998). Plaintiffs need not be medical doctors to observe the incongruence of symptoms and diagnostic opinions by Dr. Wetli. *Response*, P. 11, ln. 16-17. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co.*, 522 U.S. at 146. A trial court may exclude evidence when it finds that "there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

B. <u>Sickle Cell</u>

Mr. Mbegbu was a retired Department of Corrections officer. He managed to work in this capacity for over a decade without the requisite physical exertion resulting in any sickle cell related condition. Only on the date that the officers hit, tased, and compressed him with hundreds of pounds did he die.

Dr. Wetli concludes that because Mr. Mbegbu's tissue sample revealed sickle cell trait, exertional sickling must be a contributing cause of death. *See* Ex. #7, Dr. Charles Wetli's Report at COP_BM002143. This bold assertion is not accompanied by any true diagnostic methodology. Common laboratory findings of sickle cell related deaths include acute renal failure, rhabdomyolysis, and disseminated intravascular

coagulopathy.

> … [d]eaths unrelated to a sickling crisis in persons with underlying SCT are difficult to distinguish by histology alone in as much as perimortem hypoperfusion, hypoxia, and acidosis from any cause can also initiate sickling. … finding of sickle cells in a person without a known history of SCT should prompt confirmatory Hb electrophoresis testing, which can be accomplished in the postmortem setting.

Hughes, Maj Rhome L., USAF MC, Feig, Lt. Col. James, M. USAF MC (Ret.), <u>Sickle Cell Trait-Related Exertional Deaths: Observations at Autopsy and Review of the Literature. Military Medicine</u>, 180, 8:e929, 2015.

Notably, autopsy findings are non-specific. In a death event, when sickle cell trait is present in a person without a known history of the trait, postmortem tests are appropriate to determine if the sickle cell trait played a role in death. *Id.* Confirmatory Bb electrophoresis testing is one such method, which can be accomplished postmortem. Such testing did not take place in this case. Ex. #4 at COP_BM000280 – COP_BM000282. Absent this process, Dr. Wetli has no data upon which to rely to assert that exertional sickling occurred or contributed to Mr. Mbegbu's death. Equally important, if Dr. Wetli did have some data driven basis for this conclusion, it was not presented in his reports. *See generally* Ex. #4. *See also* Ex. #8, Dr. Wetli's Rebuttal Report. An expert's report must be "detailed and complete … stating the testimony the witness is expected to present during direct examination, together with the reasons stated therefor." Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26, Advisory Committee Notes, 1993 Amendment; *see also, Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980). "An opposing party is not required to file a motion to compel or depose the expert in order to develop what her opinion is or the reasons for it." *In re Cent. European Indus. Dev. Co.*, 427 B.R. 149, 158-159 (Bankr. N.D. Cal. 2009) (citations omitted). Regarding exertional

sickle cell, no basis for the belief that it was contributing cause of death is provided.

## III. Conclusion

Defendants Response attempts to move the discussion regarding Dr. Vilke and Dr. Welti's Reports from the failure to provide support material and analysis for the opinions offered to the qualifications of the two (2) doctors. Plaintiffs object to the failure of either expert witness to prepare a report that meets the well-established requirements of Fed. R. Evid. 702, Fed. R. Civ P. 26, *Daubert*, and it's progeny. Plaintiffs object to the failure of either expert witness to basis their opinions on facts, evidence, or other acceptable materials (articles, studies, etc.).

**WHEREFORE**, Plaintiffs respectfully request the Court grant the Plaintiffs' *Daubert* Motions to exclude the testimony of Charles Wetli, M.D. and Gary M. Vilke, M.D. and grant the relief requested therein.

**RESPECTFULLY SUBMITTED THIS** 22nd day of March, 2019.

MUSHKATEL, ROBBINS & BECKER, PLLC

By: *//s// Zachary Mushkatel*
Zachary Mushkatel
Laura Still
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Christina Gail Retts**
**cretts@wienekelawgroup.com**

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

By: *//s// Nicole Roberson*